**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MARK ANTHONY RODRIGUEZ, JR., | Civil Action No. |
| Plaintiff, | 10-4242 (RBK) |
| v. | **MEMORANDUM OPINION** |
| OFFICER R. BAELI et al., | **AND ORDER** |
| Defendants. | |

IT APPEARING THAT:

1. Plaintiff, a state prisoner, submitted for filing his amended complaint ("Complaint"), and prepaid the applicable filing fee.

2. Plaintiff's Complaint names the following persons and entities as Defendants in this matter: (a) Officer Baeli ("Baeli"); (b) Officer Gonzalez ("Gonzalez"); (c) Officer Rauch ("Rauch"); (d) Officer Melerham ("Melerham"); (e) Officer Nunez ("Nunez"); (f) Administration of AC Wagner Youth Correctional Facility ("Administration"); and (g) New Jersey Department of Corrections ("NJDOC").

3. Plaintiff asserts that, on unspecified dates, Baeli "failed to give [Plaintiff a] dinner [meal]," "treated [Plaintiff's] property and mail like trash," and, on a certain unspecified date, beat Plaintiff's arm with a flashlight, causing bleeding. Id. at 4.

4.  Plaintiff alleges that Gonzalez assisted Baeli in the alleged beating by bringing the flashlight.  See id. at 5.  Plaintiff also asserts that Gonzalez "laughed and joked" at Plaintiff.  See id.

5.  Plaintiff also maintains that Rauch, Melerham and Nunez violated Plaintiff's rights by being situated close enough to observe Baeli's alleged beating of Plaintiff's arm but did not interfere with the alleged assault.  See id. at 6.

6.  In addition, Plaintiff alleges that the Administration violated his rights by not transferring him to another prison prior to the alleged assault.  Plaintiff states that, prior to the assault, he wrote administrative grievances asserting that Baeli was not delivering Plaintiff his dinner meal(s) and was "confiscating" the books issued to Plaintiff, seemingly from the Facility library.  See id. at 5.

7.  Finally, Plaintiff asserts that the NJDOC violated Plaintiff's rights because the NJDOC's logo was at the top of the grievance forms executed by Plaintiff.  See id. at 7.

8.  Plaintiff's claims against the NJDOC are subject to dismissal.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person amenable to a § 1983 suit).

9. Plaintiff's failure-to-protect claims against the Administration are similarly subject to dismissal. The Eighth Amendment, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes, 452 U.S. at 347). To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter,

501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996). In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety. Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that . . . prison official[s] *knew of a substantial risk* from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (emphasis supplied). Therefore, a valid claim asserting deliberate indifference must state facts indicating more than a mere lack of ordinary due care, i.e., the plaintiff must assert facts showing that the defendant had a state of mind equivalent to, at least, a reckless disregard of a known risk of harm. See id. at 834. Here, Plaintiff asserts that he informed the Administration as to Baeli's alleged failure to serve

    Plaintiff with one (or few) dinner meals and as to Baeli's alleged "expropriation" of the books issued to Plaintiff. Even if the Court were to presume that the Administration was actually served with such Plaintiff's grievances, these grievances would not put the Administration on notice as to a risk of physical harm to Plaintiff: at most, the allegations in these grievances suggested to the Administration Baeli's interest in non-violent "pestering" of Plaintiff.  Therefore, Plaintiff's failure-to-protect claims against the Administration will be dismissed.

10. Conversely, Plaintiff's failure-to-protect claims against Rauch, Melerham and Nunez will be proceeded past the sua sponte dismissal stage, since it appears plausible that Rauch, Melerham and Nunez were put on notice of obvious risk of harm to Plaintiff.

11. As to Gonzalez, Plaintiff's challenges based on jokes and laughter would be dismissed, since constitutional protections are not a code of good etiquette.  Acts of verbal harassment cannot qualify as violations of the Eighth Amendment.  See Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("[V]erbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning of those terms.  'Verbal harassment or profanity

alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); see also Robinson v. Taylor, 2005 U.S. Dist. LEXIS 20951, at *8-9 (D. Del. Sept. 26, 2005) ("[M]ere verbal harassment does not give rise to a constitutional violation[; even if it is] inexcusable and offensive, [it] do[es] not establish liability under section 1983) (quoting McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) and citing Moore v. Morris, 116 Fed. App'x 203, 205 (10th Cir. 2004); Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 187-89 (D.N.J. 1993)); Abuhouran v. Acker, 2005 U.S. Dist. LEXIS 12864, at *15 (E.D. Pa. June 29, 2005) ("It is well established . . . that . . . verbal harassment, . . . standing alone, do[es] not state a constitutional claim") (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 1999); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999); Maclean v. Secor, 876 F. Supp. 695, 698 (E.D. Pa. 1995)).  Since the Plaintiff's allegations that Gonzalez laughed in the Plaintiff's

      presence are not cognizable under § 1983, see <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979) (dismissing prisoner's claim that defendant laughed at prisoner and threatened to hang him), these Plaintiff's claims will be dismissed for failure to state a claim upon which relief may be granted.

12. Conversely, Plaintiff's claims based on Baeli's alleged assault of Plaintiff and Plaintiff's claims based on Gonzalez's assistance to Baeli (by means of alleged furnishing of Baeli with a flashlight for beating Plaintiff's arm) will be proceeded past the <u>sua sponte</u> dismissal stage.  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  <u>Rhodes</u>, 452 U.S. at 346, 347.  The landmark Supreme Court case in the Eighth Amendment excessive force area is <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).  The <u>Hudson</u> Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in <u>Whitley</u> [475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Id.</u> at 6-7.  In doing so, the Court jettisoned the traditional objective prong inquiry for

establishing an Eighth Amendment claim. See id. at 22-23 (Thomas, J., dissenting) ("In the context of claims alleging the excessive use of physical force, the Court then asserts, the serious deprivation requirement is satisfied by no serious deprivation at all. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . Ascertaining prison officials' state of mind, in other words, is the only relevant inquiry in deciding whether such cases involve cruel and unusual punishment. . . . The sum and substance of an Eighth Amendment violation, the Court asserts, is the unnecessary and wanton infliction of pain. This formulation has the advantage, from the Court's perspective, of eliminating the objective component") (citations and quotation marks omitted); Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) ("In Hudson, the Court distinguished between prisoner conditions-of-confinement and medical-deprivation claims, on the one hand, and wanton use of unnecessary force claims on the other. Although the former kind of claim cannot survive without evidence that a deprivation was 'harmful enough' . . ., the latter kind of claim has no such requirement"). Consequently, under the Eighth Amendment, the Court must examine, subjectively, "whether force was applied in a good faith effort to

maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."[1] <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21, 106 S. Ct. 1078 (1986) (citation omitted).  Here, Plaintiff asserts that Baeli, with Gonzalez's assistance, assaulted Plaintiff without a reason, and the force applied to Plaintiff was so severe that it caused Plaintiff's arm to bleed.  Therefore,

---

[1] It shall be noted, however, the <u>de minimis</u> use of force, which is itself not repugnant to human decency, cannot state an Eighth Amendment claim of excessive force.  <u>See</u>, <u>e.g.</u>, <u>Hudson</u>, 503 U.S. at 9-10 ("The Eighth Amendment's prohibition of cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (internal citation and quotation marks omitted).  This is not to say that a fact-finder at trial will disregard the extent of the injuries suffered by a plaintiff.  As the Supreme Court observed in <u>Hudson</u>:

> Under the <u>Whitley</u> approach, the extent of injury suffered by an inmate is one factor that may suggest "whether the use of force could plausibly have been thought necessary" in a particular situation, "or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  475 U.S. 312, 321.  In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." <u>Id.</u>  The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it.

<u>Hudson</u>, 503 U.S. at 7.

      Plaintiff's claims to that effect do not warrant dismissal at this juncture.

13. In contrast, Plaintiff's claims against Baeli based on Baeli's alleged failure to serve Plaintiff with a dinner meal (or with a few dinner meals) do not assert a violation of constitutional magnitude.  The Eighth Amendment requires that prison officials serve "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980); see also Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).  Thus, "[a] substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment." Thompson v. Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002).  Nevertheless, while "a prisoner's diet must provide adequate nutrition," prison officials "cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." Mays v. Springborn, 575 F.3d 643, 648 (7th Cir. 2009) (citation omitted).  Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." Berry v. Brady,

    192 F.3d 504, 507 (5th Cir. 1999) (quoting <u>Talib v. Gilley</u>, 138 F.3d 211, 214 n.3 (5th Cir. 1998)).  As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.  A filthy, overcrowded cell and a diet of 'gruel' [providing 1000 calories a day] might be tolerable for a few days and intolerably cruel for weeks or months."  <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978).  Here, the allegations in this Complaint do not satisfy the objective component, since Plaintiff merely alleges that Baeli failed to deliver him one (or a few) dinners, rather than deprived him of dinner meals for weeks or months.  Therefore, these claims are subject to dismissal.

14. With the same token, Plaintiff's claims that Beali "treated [Plaintiff's] property and mail like trash" are subject to dismissal.  This is so because Plaintiffs' claims are barred by the availability of state post-deprivation remedy. <u>See Parratt v. Taylor</u>, 451 U.S. 527 (1981) (property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 if an ample post-deprivation remedy exists under state law), <u>overruled on other grounds</u>, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>see</u> <u>also</u> <u>Zinermon v. Burch</u>, 494 U.S. 113, 115, (1990); <u>Hudson</u>, 468 U.S. 517.  Here, the New Jersey Tort

Claims Act ("NJTCA"), N.J. Stat. Ann. § 59:1-1 et seq., provides an ample post-deprivation remedy to persons who believe they were deprived of property by the acts of state government officials (or had their property injured). See Asquith v. Volunteers of America, 1 F. Supp. 2d 405, 419 (D.N.J. 1998), aff'd, 186 F.3d 407 (3d Cir. 1999). Thus, Plaintiffs claims alleging injury to his personal belongings are barred by the NJTCA and will be dismissed with prejudice.

IT IS, therefore, on this __4th__ day of __January__, 2011,

ORDERED that Plaintiff's claims against the Department of Corrections and the Administration of Facility are dismissed with prejudice and Clerk shall terminate these Defendants as defendants in this matter; and it is further

ORDERED that all Plaintiff's claims against Defendants Baeli and Gonzalez based on facts other than Defendant Baeli's alleged beating of Plaintiff's arm are dismissed with prejudice; and it is further

ORDERED that Plaintiff's claims against Defendants Baeli and Gonzalez based on the alleged beating of Plaintiff's arm are proceeded past the sua sponte dismissal stage; and it is further

ORDERED that Plaintiff's claims against Defendants Rauch, Melerham and Nunez based on the alleged failure to protect are proceeded past the sua sponte dismissal stage; and it is further

ORDERED that the Clerk shall serve Plaintiff with summons forms and Plaintiff shall serve these summons on Defendants Baeli, Gonzalez, Rauch, Melerham and Nunez, together with copies of Plaintiff's Complaint and this Order; and it is further

ORDERED that Defendants Baeli, Gonzalez, Rauch, Melerham and Nunez shall file and serve a responsive pleading within the time specified in Federal Rule of Civil Procedure 12, pursuant to 42 U.S.C. § 1997e(g)(2); and it is finally

ORDERED that the Clerk of the Court shall serve a copy of this Order and five summons forms upon Plaintiff by certified mail, return receipt requested.

                                              s/Robert B. Kugler
                                              **ROBERT B. KUGLER**
                                              **United States District Judge**